ERIC J. HEIMANN
Wyoming State Bar No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82001
(307) 772-2124
eric.heimann@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 OCT 27 PM 1:04

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIBSON CONDIE<br><br>Defendant. | Case No. 17-CR-124-J |

## PROSECUTOR'S STATEMENT AND ELEMENTS OF THE CRIME

Defendant Gibson Condie and the United States of America have entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to resolve the above-entitled matter. (Doc. 39.) The Defendant is scheduled to change his plea on October 27th; therefore, the United States, by and through Assistant United States Attorney Eric Heimann, respectfully submits this prosecutor's statement.

### I. The Plea Agreement

The Defendant has agreed to plead guilty to Count 200 of the indictment, which count alleges *Health Care Fraud* in violation of 18 U.S.C. § 1347 for a $229,342.25 bill submitted to Wyoming Medicaid on or about August 3, 2015. The Defendant understands that the maximum penalties for a conviction on this count include up to 10 years in prison with no mandatory minimum, a maximum fine of $250,000, up to three years supervised release, a $100 special

assessment, and restitution. In exchange for the Defendant's guilty plea and other promises outlined in the plea agreement, the United States will move to dismiss the remaining counts of the indictment at sentencing.

The Defendant and the government have agreed that the appropriate custodial sentence is 36 months in prison. This is a Rule 11(c)(1)(C) agreement, so the Defendant will be allowed to withdraw his plea if the Court rejects this sentencing agreement.

In addition to the stipulated prison sentence, the Defendant has agreed to forfeit certain assets traceable to the proceeds of the Defendant's scheme, and to pay $2,283,702.49 in restitution to the United States Department of Health and Human Services and the Wyoming Department of Health.

## II. Elements of the Crime

As charged and as described in the stipulated factual basis, the elements of the crime are: **(a)** the Defendant devised a scheme to obtain money under the custody or control of Wyoming Medicaid by means of false pretenses, representations, or promises; **(b)** the Defendant executed this scheme; and **(c)** the Defendant acted knowingly and willfully with intent to obtain money under the custody or control of Wyoming Medicaid by means of false pretenses, representations or promises. *See United States v. Rufai*, 732 F.3d 1175 (10th Cir. 2013).

## III. Evidence of the Crime & Relevant Conduct

As part of the plea agreement, the Defendant has agreed that the following facts are true, they prove the elements of the charged fraud, and the government could have proven them beyond a reasonable doubt if this matter had proceeded to trial.

    a.    Wyoming Medicaid is a joint federal and state government program that pays for medical care for some low-income and medically needy individuals and families in the state of Wyoming. Therefore, it is a health care benefit program as defined by 18 U.S.C. § 24(b). The Centers for Medicaid and Medicare Services (CMS), an

      agency of the United States Department of Health and Human Services, funds state Medicaid programs, including Wyoming Medicaid. CMS issues rules and regulations which govern Wyoming Medicaid and other state Medicaid programs. The Wyoming Department of Health funds and administers Wyoming Medicaid for the state of Wyoming. The Department issues rules and regulations which control what services are covered by Wyoming Medicaid and who is eligible to receive and to provide those services.

b.    At the times relevant to the indictment, health care providers were required to enroll in Wyoming Medicaid to receive payments from the program. When seeking reimbursement, enrolled providers submit bills that must include (among other information) a National Provider Identification number which identifies the treating provider (meaning, the individual who rendered the service); a diagnosis code which identifies the illness, injury or disease being treated; a procedure code which identifies the specific medical procedure or health care service provided; and the date the service was rendered. Wyoming Medicaid uses this information to process and pay claims.

c.    Defendant GIBSON CONDIE has a Ph.D. in educational psychology and has been licensed as a psychologist by the Wyoming Board of Psychology since March 1997.

d.    In January 2007, the Defendant incorporated Big Horn Basin Mental Health Group Inc. (Big Horn Basin MHG) as a Wyoming domestic corporation. In February 2007, the Defendant enrolled in Wyoming Medicaid by signing a provider agreement and provider enrollment certification for "Big Horn Basin Mental Health." Accordingly, the Defendant could and did bill Wyoming Medicaid through Big Horn Basin MHG until the Wyoming Department of Health suspended all Medicaid payments to Big Horn Basin MHG in 2016.

e.    The Defendant billed Wyoming Medicaid through Big Horn Basin MHG for a number of individuals and entities. The vast majority of these individuals and entities were not enrolled in Wyoming Medicaid, as required by the program for behavioral health service providers who were supervised by a psychologist beginning no later than November 2012. A large number were untrained individuals who could not enroll in Wyoming Medicaid and who were not licensed or otherwise authorized to provide any mental health services to Wyoming Medicaid beneficiaries.

f.    The Defendant operated Big Horn Basin MHG out of his residence and an office in Powell but did not maintain a central location where the persons for whom he billed Medicaid could meet with beneficiaries. Instead, these individuals met with beneficiaries at various locations around the state of Wyoming. Although the Defendant made himself available to answer questions by telephone, he rarely observed therapy sessions and rarely reviewed treatment plans, progress notes, or any other information regarding the services being provided to beneficiaries. Therefore, the Defendant did not properly supervise Big Horn Basin MHG affiliated individuals and did not know whether the services for which he was

        billing Wyoming Medicaid were being provided, were therapeutically necessary, or were alleviating any mental health disorder suffered by any beneficiary.

g.   When Wyoming Medicaid paid Big Horn Basin MHG, the Defendant kept a portion of the money for himself and distributed the remaining money to the individual or entity who had spent time with the beneficiary. For a couple of providers, the Defendant kept 50% or more of the money paid by Wyoming Medicaid.

h.   The Defendant reported to Wyoming Medicaid that Big Horn Basin MHG was the treating provider even though Defendant personally had not rendered any of the claimed services. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he believed Wyoming Medicaid would not pay if the Defendant truthfully identified the individual who had actually rendered the claimed services.

i.   Wyoming Medicaid pays for mental health services only when a beneficiary has been diagnosed with a recognized mental health disorder. The process of diagnosing a mental health disorder is called a clinical assessment, which may be billed to Wyoming Medicaid using procedure code H0031. The Defendant routinely paid a flat-fee to Big Horn Basin MHG affiliated individuals to complete mental health assessments of Wyoming Medicaid beneficiaries regardless of how long it took to complete each assessment. The Defendant then billed Wyoming Medicaid for a number of "time units" allegedly required to complete these assessments when he did not know how long it had actually taken to complete the assessment, and he determined the "time units" to bill based solely on the flat-fee he had agreed to pay plus an amount of money he would keep for himself. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he knew Wyoming Medicaid would not pay if he truthfully reported that he did not know how long each assessment had taken, and truthfully reported that he inflated the bill to pay himself for submitting the claim to Medicaid.

j.   Wyoming Medicaid requires procedure code H0031 clinical assessments be completed or properly supervised by a Ph.D. level psychologist or psychiatrist/physician. The Defendant routinely employed individuals who did not have the required training or license to complete clinical assessments of Wyoming Medicaid beneficiaries without proper supervision. In many cases, the Defendant did not properly supervise these assessments but nonetheless endorsed the resulting diagnosis as if he had personally completed, or properly supervised, the assessment. The Defendant also told untrained and unlicensed individuals to include specific mental health disorders in assessments even though the Defendant had not properly examined the beneficiaries and had not properly supervised the assessments. In all cases, the Defendant caused Wyoming Medicaid to be billed as if he had properly supervised each assessment and diagnosed the beneficiary with a mental health disorder. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he knew Wyoming Medicaid would not pay if he truthfully reported his limited role in the assessments and the limited basis for his alleged diagnosis of a mental health disorder.

k. Wyoming Medicaid pays for time required to complete a clinical assessment under procedure code H0031, including "collateral contacts" with individuals who know relevant information about a beneficiary for the purpose of completing an evaluation of the client's mental health disorders and treatment needs. The Defendant told Big Horn Basin MHG affiliated individuals that he could bill Wyoming Medicaid for so-called "collateral services" which he said were activities that did not include contact with the beneficiary but were supposed to be for the benefit of the beneficiary. The Big Horn Basin MHG affiliated individuals then reported the time they spent performing these "collateral services" to the Defendant. The Defendant billed Wyoming Medicaid for this time under procedure code H0031 as if all of these "collateral services" were part of a clinical assessment even though he did not know the nature or substance of the services and he had no reason to believe that the services were related to any valid assessment process. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he knew Wyoming Medicaid would not pay under procedure code H0031 (or any other mental health services code) if he truthfully reported the nature and substance of these "collateral services" and the lack of any relationship between these services and any valid assessment process.

l. Wyoming Medicaid pays for life skills training under procedure code H2014, psycho/social rehabilitation under procedure code H2017, and adult case management under procedure code T1017 when a qualified beneficiary is diagnosed with a mental health disorder, the services are therapeutically necessary, and the services are provided by an authorized Community Mental Health Center or Substance Abuse Treatment Center. The Defendant billed Wyoming Medicaid for these services even though Big Horn Basin MHG was not such a center and neither the Defendant nor any of his affiliated individuals worked for or were otherwise connected with such a center to provide these services. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he knew Wyoming Medicaid would not pay under these procedure codes (or any other mental health services code) if Wyoming Medicaid knew that the services had not been provided by an authorized center as required by the program.

m. The Defendant also billed services under procedure codes H2014 and H2017 when, if he had properly supervised the individuals and entities for whom he was billing Wyoming Medicaid, he would have known that the beneficiary had not received services defined by these codes; but rather the claimed services had consisted of activities that did not qualify as therapeutically necessary rehabilitative therapy as defined by Wyoming Medicaid. The Defendant did this with intent to cause Wyoming Medicaid to pay for services for which he knew Wyoming Medicaid would not pay under these procedure codes (or any other mental health services code) if Wyoming Medicaid knew the true nature of the activities.

n. Using the scheme and false pretenses described above, on or about August 3, 2015, the Defendant submitted, and caused to be submitted, a claim to Wyoming Medicaid for $229,342.25. This bill included false claims for $10,374.75 in procedure code H0031 assessments, $35,482.50 in procedure code H2014 skills

training, $72,616.25 in procedure code psycho/social rehabilitation, and $3,675.75 in procedure code T1017 case management.

o. Using the scheme and false pretenses described above, between June 2012 and February 2016, the Defendant billed Wyoming Medicaid for approximately $2.283 million in mental health services using procedure codes H0031, H2014, H2017 and T1017 even though he knew that many of the alleged services were not therapeutically necessary (as defined by Wyoming Medicaid), were not provided through an authorized center (as required by Wyoming Medicaid), were not provided by a properly licensed or supervised individual, and/or the substance of the activities did not qualify for billing under the codes used. Because of these claims, Wyoming Medicaid paid the Defendant approximately $2.27 million in state and federal funds, some of which he kept for himself and some of which he distributed to his network of affiliated individuals and entities. Specifically, the Defendant billed Wyoming Medicaid as follows:

   i) $721,254.24 under procedure code H0031, for which he was paid $710,459.49;

   ii) $586,108.25 under procedure code H2014, for which he was paid $584,410.25;

   iii) $879,512 under procedure code H2017, for which he was paid $878,673.53; and

   iv) $96,828 under procedure code T1017, for which he was paid $96,762.75.

p. The Defendant devised and executed the above-described scheme utilizing false pretenses and representations to Wyoming Medicaid.

## IV. Sentencing Guidelines

The Defendant is pleading guilty to a felony offense with a maximum prison sentence of 10 years; therefore, his base offense level should be 6 under USSG §2B1.1(a)(2). In addition, the parties have agreed that the Defendant's relevant conduct includes the following specific offense characteristics: **(a)** the Defendant caused losses of more than $1.5 million but less than $3.5 million such that his offense level shall be increased by +16 levels under USSG § 2B1.1(b)(1)(I); **(b)** the Defendant caused a loss to a government health care program of more than $1 million but less than $7 million such that his offense level shall be increased by +2 levels under USSG § 2B1.1(g)(7)(i); and **(c)** the Defendant abused his position as a Ph.D. educated and licensed psychologist such that

his offense level shall be increased by +2 levels under USSG § 3B1.3. The government believes the Defendant will guideline in Criminal History Category I.

If the Court accepts these stipulations, and grants all credit for acceptance of responsibility, the Defendant's total offense level will be 23 and his advisory guidelines sentencing range will be 46-57 months in custody. The stipulated sentence of 3 years in prison would then be a downward variance of only 10 months from the bottom-end guideline sentence.

DATED this 27th day of October, 2017.

                                          JOHN R. GREEN
                                        Acting United States Attorney

By:     /s/ Eric J. Heimann
        ERIC J. HEIMANN
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, the foregoing was electronically filed and consequently served on defense counsel.

                                        */s/ Kylie Severns*
                                        UNITED STATES ATTORNEY'S OFFICE