ERIC J. HEIMANN
Wyoming State Bar No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82001
(307) 772-2124
eric.heimann@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**GIBSON CONDIE,**<br><br>Defendant. | **Case No. 17-CR-124-J** |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S PETITION
## TO AWARD FIRST STEP ACT BENEFITS

Defendant Gibson Condie is serving a 36-month prison sentence imposed by this court following his conviction for healthcare fraud. The Defendant agreed to this stipulated, below-guidelines sentence as part of a c1C plea agreement with the government. *See Plea Agreement*, Doc. 39. Despite agreeing to serve 36 months, and receiving significant credit against this sentence already, the Defendant has filed a letter-petition demanding special treatment under the First Step Act of 2018, Publ. L. No. 115-391 (2018). Specifically, the Defendant wants this court: **(1)** to award him "165 days of programming credit" against his sentence; **(2)** to "direct that [his] Home Confinement Eligibility date be recalculated to be December 2, 2019"; and **(3)** "order that [he] begin home confinement on that date." *FSA Pet.* at 3. *FSA Pet.*, Doc. 102.

The United States, by and through Assistant United States Attorney Eric Heimann, opposes the petition. It must be denied because this court does not have the power to grant the sentencing

credits and home confinement demanded by the Defendant. Even if this court could do what the Defendant asks, he is not yet entitled to any of the claimed benefits. At bottom, the Defendant seeks to jump the line of other prisoners awaiting First Step Act benefits and get out of prison before he is entitled to under the Act or this court's sentence.

### THE FIRST STEP ACT OF 2018

As relevant here, the First Step Act required the Attorney General to create an evidence-based risk and needs assessment system to (among other things) determine recidivism risk of each prisoner and the type and amount of evidence-based recidivism reduction programming appropriate for each prisoner. 18 U.S.C. § 3632(a). The Act also set out various rewards for prisoners who participated in approved programs, *id.* at § 3632(d), and penalties for prisoners who violated program or prison rules, *id.* at § 3632(e). Eligible prisoners who successfully complete an approved program or productive activities earn time credits against their sentence. *Id.* at § 3632(e)(4). An "evidence-based recidivism reduction program" is one that "has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism," and "is designed to help prisoners succeed in their communities upon release from prison." *Id.* at § 3635(3). A "productive activity" is one "that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating." *Id.* at § 3635(5).

The Attorney General published the required risk and needs assessment system on July 19, 2019. *See* https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last viewed November 25, 2019). The Act gives the Attorney General 180 days following release of the risk and needs assessment system to

complete an initial assessment of each prisoner and begin to assign prisoners to programs based on that determination. 18 U.S.C. § 3621(h)(1)(A). This period will run on January 15, 2020. The Act requires the Attorney General to "implement and complete the initial intake and risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of [the Act], regardless of the prisoner's length of imposed term of imprisonment…." *Id.* Nothing in the Act requires the Attorney General to give any particular prisoner or set of prisoners priority during the initial assessment period.

The Act provides for a 2-year phase-in period from the release of the assessment system within which the Bureau of Prison (BOP) must provide programs and productive activities for all prisoners. *Id.* at § 3621(h)(2). The phase-in period runs on July 19, 2021. Unlike initial assessments, during this phase-in period, BOP must give priority for recidivism reduction programs and productive activities to prisoners based upon proximity to release date. *Id.* at § 3621(h)(3).

As to pre-release custody, the Act authorizes BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* at § 3624(c)(2). The Defendant was sentenced to 36 months in prison, so BOP may place him in home confinement for no more than 3.6 months. "The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph [§ 3624(c)(2)]." *Id.*

Although the First Step Act makes significant changes to the federal penal system, it does not give district courts any new powers to determine time credits or to require a prisoner to be imprisoned by BOP in a particular place or in a particular manner.

*A*RGUMENT

The Defendant claims that he is entitled to 165 days of programming credit and therefore he is eligible for home confinement beginning December 2, 2019. *FSA Pet.* at 2-3. He further claims that he is entitled to home confinement as soon as he is eligible. *Id.* The Defendant admits, however, that he comes to this court without pursuing any administrative remedies. *Id.* at 2. He further admits that he has yet to be assessed, and the statutory phase-in period has not run. *Id.* at 2-3. All of this dooms the Defendant's petition.

1. **This Court does not have jurisdiction to grant time credits or place the Defendant into home confinement.**

When a person is sentenced to a term of imprisonment, that person shall be committed to the custody of the Bureau of Prisons. 18 U.S.C. § 3621(a). And the "Bureau of Prisons shall designate the place of the prisoner's imprisonment…." *Id.* at § 3621(b). Similarly, the First Step Act authorizes BOP—no one else—to place a prisoner in home confinement. *Id.* at § 3624(c)(2). The Act's time-credit provisions are expressed in a passive voice that does not immediately identify who is empowered to grant the credits: "A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completed evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows…." *Id.* at § 3632(h)(4)(A). But the Act requires the Attorney General to develop the risk and needs assessment system that awards credit for successful completion of programming and activities, and requires the BOP to implement the provisions. *See id.* at § 3632. And the Supreme Court has held that a passively-voiced sentencing statute empowers BOP, not the sentencing court, to award prior custody time credits under 18 U.S.C. § 3585. *United States v. Wilson*, 503 U.S. 329 (1992). Therefore, it is BOP—and no one else—who can award First Step Act time credits in the first instance.

As the Tenth Circuit has stated, "a federal district court does not have the authority to grant *credits* against federal sentences; rather, such authority lies exclusively with the BOP, whose decisions are then subject to appeal and ultimately judicial review." *United States v. Chavez*, 723 F.3d 1226, 1231 n.2 (10th Cir. 2013) (emphasis in original), citing *Wilson*, 503 U.S. at 335; *see also United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997); *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir. 1995); *United States v. Checchini*, 967 F.2d 348, 349–50 (9th Cir. 1992). Instead, an inmate must exhaust his administrative remedies, and only then may he seek review via a 28 U.S.C. § 2241 habeas petition. *See al-Marri v. Davis*, 714 F.3d 1183, 1184-86 (10th Cir. 2013) (describing procedural history of inmate's challenge to BOP good-conduct credit determination); *see also United States v. Callahan*, 800 F.3d 422, 426 (8th Cir. 2015); *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000); *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993); *Checchini*, 967 F.2d at 350; *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990).

The same logic applies the home-confinement decision because it is delegated by Congress to BOP. An aggrieved inmate's recourse is to challenge the decision administratively, and then petition under 28 U.S.C. § 2241 to the federal district court where he is incarcerated.

Here, the Defendant admits that he has not attempted any administrative remedies. *FSA Pet.* at 2. Therefore, this court does not have jurisdiction to grant him the relief he seeks and his petition must be denied.

  **2. Even if this court could grant the requested benefits, the Defendant is not entitled to any special treatment under the First Step Act.**

Under the terms of the Act, the Defendant is not yet entitled to the time credits and home confinement he demands. BOP is still implementing the Act as authorized by Congress. The Defendant has no right to force earlier action just because it may benefit him.

The Defendant's calculation of programming-time credits and supposed entitlement to home confinement beginning December 2 depends on his classification as a low- or minimal-risk offender. He claims to have been told he will qualify as minimal risk—and he may—but BOP hasn't classified him yet. And the Attorney General has until January 15, 2020, to complete that classification. Whatever benefits Congress intended the Defendant to receive, Congress also intended to give the government time to develop an assessment system and complete assessments of all prisoners. Since the Defendant's assessment has not been completed, and the government has until mid-January to complete it, he is not yet entitled to any benefits that depend on a low- or minimal-risk classification. Such benefits include the time credits and home confinement he now demands.

Similarly, the Defendant admits that BOP has not determined what qualifies as "30 days of programming" for purposes of the First Step Act. *FSA Pet.* at 2. Therefore, the Defendant's claim for 165 days of time credit depends on *his* determination that his tutoring and apprenticeship hours count as evidence-based recidivism reduction programming or productive activities as defined by the Act. Again, the 2-year phase-in period for BOP to provide qualifying programs and activities does not run until July 2021. Until then, the Defendant has no statutory right to have his activities designated or treated as recidivism reduction programming or productive activities.

The Defendant recognizes the phase-in period, but claims that it should not apply to his facility because FPC-Yankton already offers programming opportunities for 100% of its inmates.

*FCA Pet.* at 3. There are two problems with this argument. First, there is nothing in the First Step Act (or any other federal law) that requires BOP to award time credits in a particular facility when there are programming opportunities for all of the inmates in that facility. Second, having programs for all inmates does not make those programs "evidence-based recidivism reductions programs" under the First Step Act. Nor does it require BOP to adopt the Defendant's method for counting program hours—and to do so right now.

Finally, the Defendant demands home confinement beginning December 2, 2019, but claims that his release date remains September 1, 2020, so he is not receiving a sentence reduction. *FSA Pet.* at 3. This is disingenuous. The Defendant's sentence was 36 months, so he may receive no more than 3.6 months in home confinement. *See* 18 U.S.C. § 3624(c)(2). Therefore, the only way the Defendant can be placed in home confinement on December 2 is if he is to be released in mid-March. This may be the result after the Defendant is assessed and BOP calculates his programming credits—or it may not—only time will tell. What is certain now is that the Defendant is demanding a sentence reduction from this court under the guise of granting him time credits under the First Step Act.

## CONCLUSION

In his petition, the Defendant demands special treatment. He demands this special treatment based on his desire to go home sooner than he is otherwise entitled to do so. He cloaks his arguments in the First Step Act and "Congressional intent," but he is not yet entitled to any more than he has already received under the Act. Impatient, he demands to be moved to the front of line—and ushered out the prison door—ahead of other prisoners and without pursuing the administrative remedies available to him. He further demands that the court impose upon BOP *his*

determination of programming-time credit and *his* determination that his activities qualify as recidivism reduction programming under the Act. This court cannot and should not acquiesce to the Defendant demands. The Defendant's petition should be—and must be—denied.

Respectfully submitted this 2nd day of December, 2019.

                          MARK A. KLAASSEN
                          United States Attorney

By:    */s/Eric J. Heimann*
       ERIC J. HEIMANN
       Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of December, 2019, I served true and correct copies of the foregoing motion upon counsel of record via CM/ECF, and upon Defendant Gibson Condie via certified U.S. Mail to the following address.

Inmate Gibson Condie
Reg. # 16697-091
FPC-Yankton
PO Box 700
Yankton, SD 57078

                          */s/Louisa G. Cruz*
                          United States Attorney's Office